IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 08-75-SLR |
| | : | |
| TEDDY COPPEDGE, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Teddy Coppedge, by and through his undersigned counsel, Keir Bradford,

hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fourth

and Fifth Amendments of the United States Constitution, for an Order suppressing the

Government's use of any and all evidence illegally seized by law enforcement officials on April 8,

2008, including all statements made subsequent to the illegal search.

In support of this motion, Mr. Coppedge avers as follows:[1]

1. On April 8, 2008 Wilmington Police Officers, Detective Cunningham and Riley

observed a white Buick on the corner of Sixth and West Street. The driver, later identified as

Mr. Coppedge, exited the vehicle and spoke with an unknown male. Mr. Coppedge then re-

entered the Buick and drove to the 200 block of West Eighth Street.

---

[1] The facts contained in paragraphs 6-8 of this motion were taken from the arresting
officer's April 14, 2008 Investigative Narrative. ("Exhibit A"). Although Mr. Coppedge cites
these facts in his motion, he does not concede that the events transpired as stated by the arresting
officer.

2.   The unknown male walked to the 200 block of West Eighth Street and entered another vehicle.  The unknown male then exited the vehicle with a bag and went into a barbershop.  Mr. Coppedge exited his vehicle and followed the unknown male into the barbershop.

3.   Upon exiting the barbershop, Mr. Coppedge entered the Buick and drove westbound on West Eighth Street, where it is alleged that he disregarded a red light.  Mr. Coppedge parked his car and exited his vehicle while talking on his cell phone.  Shortly after, he re-entered his vehicle and began to put his car in reverse, when Bryant walked up to the vehicle.

4.   Mr. Coppedge exited the vehicle and walked to the north side of the street with Bryant. Detective Cunningham and Riley approached Mr. Coppedge to detain him for the alleged traffic violation.  Furthermore, the officers handcuffed Mr. Coppedge and placed him on the ground to prevent Mr. Coppedge from fleeing.

5.   While detained, the detectives asked Mr. Coppedge a series of questions.  Detective Riley first asked Mr. Coppedge how he got to this location, to which Mr. Coppedge first responded that he had walked there and did not have a car in the area.  Riley next asked Mr. Coppedge, whether he had anything illegal on his person, to which Mr. Coppedge responded he did not and that the officer could check.

6.   Detective Riley located a key in Mr. Coppedge's pocket and asked, to what vehicle it belonged.  Mr. Coppedge allegedly replied that it belonged to his cousin's car which was in the Browntown section of [Wilmington].  Riley then asked about the Buick parked across the street, to which Mr. Coppedge allegedly replied the keys belong to that car.  Mr. Coppedge was then asked if there was anything illegal in the vehicle, to which he allegedly answered "I got some 'bud' in the center console.  You can check the car."

7. Detective Riley alleges that he entered the vehicle and lifted the center console and observed a green plant like substance, approximately two grams, which later tested positive for marijuana. Detective Riley states that also in the center console was the door key to the vehicle, which also unlocked the locked glove compartment.

8. Detective Riley opened the glove box, where he observed a white plastic bag and a black plastic bag. Allegedly, the white bag contained approximately forty grams of a substance that tested positive for marijuana and allegedly a black bag containing one glove and a black handgun. In the backseat, Riley located a pair of pants containing $101.00 and Mr. Coppedge's identification card.

9. Mr. Coppedge and the vehicle were thereafter transported to Wilmington Police Central. The detectives administered Mr. Coppedge his Miranda rights, and he made several statements.

### A. Mr. Coppedge's Statements To Police Prior to the Search of His Vehicle Were Obtained In Violation of His Fifth Amendment Rights.

10. The Fifth Amendment of the United States Constitution protects a citizen from being "compelled in any criminal case to be a witness against himself." US CONST Amend V. The prosecution may not use statements, whether exculpatory or inculpatory stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. See Miranda v. Arizona, 384 U.S. 436,444 (1966). The failure to administer Miranda warnings when a person is subject to custodial interrogation creates a presumption of compulsion, and even unwarned voluntary statements are excluded from evidence. See United States v. DeSumma 272 F.3d 176 (3d Cir. 2001). The Supreme Court defined custodial interrogation as "questioning by law enforcement officers after a person has

been taken into custody or deprived of his freedom of action in any significant way." <u>Miranda.</u> at 444.

11.  Mr. Coppedge was in custody, as the officers stated in their report.  "In determining whether an individual [is] in custody a court must examine all of the circumstances surrounding the interrogation, but the 'ultimate inquiry is simply whether there was a formal arrest or restraint in freedom of movement' of the degree associated with a formal arrest." <u>Stansbury v. California</u> 511 U.S. 318 (1994).

There are at least three different worded tests for when a person is in custody: (1) when the person has been deprived of her or his freedom in some significant way; (2) when a reasonable person would perceive that he or she was not at liberty to terminate the interrogation and leave; and (3) when there is a restraint on the person's freedom of movement of the degree associated with formal arrest.  <u>United States v. Jacobs</u>, 431 F.3d 99 (3d Cir. 2005).

12.  The officers stated in their report, that they had placed Mr. Coppedge into custody to prevent him from fleeing.  Because the officers had placed Mr. Coppedge  into custody, a reasonable person would perceive that he was not at liberty to terminate the interrogation, and therefore Mr. Coppedge qualifies as in custody for <u>Miranda</u> purposes.

13.  Further, the officers interrogated Mr. Coppedge while he was in custody. Interrogation occurs whenever a person is subjected to either express questioning or its functional equivalent. <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980).  In the present case, Mr. Coppedge was subject to express questioning.  Detective Riley asked Mr. Coppedge a series of questions, including if there was anything illegal in Mr. Coppedge's vehicle.  Mr. Coppedge allegedly

responded with incriminatory statements stating: "I got some bud in the center console...you can check it out."

14.  The officers did not give Mr. Coppedge <u>Miranda</u> warnings before he was subject to the custodial interrogation.  Therefore, the statements that Mr. Coppedge made to the officers that "[Coppedge] had [marijuana] and that the [officers] can check [the car] out" must be suppressed.

### B. The Evidence Seized As a Result of the Search of Mr. Coppedge's Vehicle Was Conducted in Violation of His Fourth Amendment Rights, and Therefore Must Be Suppressed.

15.  Mr. Coppedge's alleged consent to allow the officers to search his car was not voluntary and thus was ineffective.  The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. Amend. IV.  When a prosecutor seeks to rely upon consent to justify the lawfulness of a [warrantless] search, he has the burden of proving that the consent was in fact, freely and voluntarily given. <u>Bumper v. North Carolina</u> 391 U.S. 543, 548 (1968).

16.  It is only by analyzing all the circumstances of an individual consent that it can be ascertained whether [the consent] was voluntary or coerced. <u>Schneckloth v. Bustamonte</u> 412 U.S. 218, 232 (1973).  Although it is not a prerequisite of voluntariness to inform a suspect of his fourth amendment rights, when the suspect is the subject of a custodial interrogation, a custodial interrogation is inherently coercive. <u>See</u> <u>Id.</u> at 247.  Further, unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice.  <u>Id.</u> (quoting <u>Miranda v. Arizona</u> 348 U.S. at 458 (1966)).

17.  In the present case, Mr Coppedge was placed in custody and subjected to questioning designed to elicit incriminating responses.  Mr. Coppedge never received <u>Miranda</u> warnings.  Further, Mr. Coppedge  only consented to a search of his vehicle in response to an officers question that was intended to elicit an incriminating response.  Therefore, because the officers did not provide Mr. Coppedge with adequate protective devices to dispel the compulsion inherent in a custodial interrogation, his consent to search his vehicle was not the  product of his free choice.

18.  Because the search of Mr. Coppedge's vehicle was conducted in violation of Mr. Coppedge's Fourth Amendment rights, all evidence seized as a result of that search must be suppressed.  Evidence seized during and unlawful search cannot constitute proof against the victim of that search.  <u>Wong Sun v. U.S.</u> 371 U.S. 471, 484 (1963).  Therefore, the evidence obtained as a result of the search of Mr. Coppedge's vehicle must be suppressed.

**C. The Statements Made Subsequent to the Illegal Search Must be Suppressed As Tainted Fruit of the Fourth Amendment Violation.**

19.  Mr. Coppedge's statements to police after the illegal search of his vehicle must be suppressed as tainted fruit of the fourth amendment violation.  Verbal evidence which derives from an unlawful entry and unauthorized arrest is no less a fruit of official illegality, than the more common tangible fruits of the unwarranted intrusion.  <u>Id.</u> at 486.  The apt question in such a case is whether, granting establishing of the primary illegality, the evidence to which the instant objection is made, has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. <u>Id</u>. at 487.

20.  While <u>Miranda</u> warnings do constitute a factor to be considered in ascertaining

whether a confession is obtained by the primary illegality, other facts are to be examined as well including the temporal proximity of the arrest, presence of intervening circumstances, particularity and the purpose and flagrancy of the police misconduct. See Brown v. Illinois, 422 U.S. 590 (1975).

21.   Although Mr. Coppedge was given Miranda warnings after the illegal search, the statement he made to the detectives concerning a gun and  marijuana were a direct result of the gun and marijuana illegally seized from Mr. Coppedge's vehicle.  Further, the statement was made immediately following the search, while Mr. Coppedge was being held in custody.  The sole intervening circumstance between the illegal search and the self-incriminating statements was that Mr. Coppedge was driven to the police station.

If  however the subsequent statement had become so attenuated to dissipate the taint, then the fruit of poisonous tree doctrine does not apply.  See Id. at 491 (quoting Nardone v. U.S., 208 U.S. 338 (1939)).

Mr. Coppedge's statement had not become so attenuated to dissipate the taint, as the statements were made on the same day as the illegal search and to the same officers who conducted the illegal search.  Further, the statements directly concerned evidence seized during the illegal search. Therefore Mr. Coppedge's statements should be excluded as fruit of the illegal search.

**WHEREFORE**, it is respectfully requested that an evidentiary hearing be scheduled, and that the Defendant's Motion to Suppress Evidence and Statements be **GRANTED.**

Respectfully submitted,

/s/ _____

Keir Bradford, Esquire
Assistant Federal Public Defender
704 King Street, Suite 110
Wilmington, Delaware  19801
(302) 573-6010

Attorney for Defendant Teddy Coppedge

DATED:   June 6, 2008

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,          :
                                   :
                    Plaintiff,     :
                                   :
        v.                         :          Criminal Action No. 08-75-SLR
                                   :
TEDDY COPPEDGE,                    :
                                   :
                    Defendant.     :

**ORDER**

**AND NOW**, this _____ day of _____, 2008, upon consideration of Defendant's Motion to Suppress Physical Evidence and Statements, and the Government's response thereto, it is hereby ORDERED that the Motion is GRANTED.

All physical evidence seized by the Wilmington Police Department on or about April 8, 2008 and statements made by Defendant to law enforcement officials on or about April 8, 2008, are hereby **SUPPRESSED**. Such physical evidence and statements shall be inadmissible, for any purpose, by the Government.

**BY THE COURT:**

_____
Honorable Sue L. Robinson
United States District Court Judge