IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 08-CR-00075-SLR |
| | : | |
| TEDDY COPPEDGE, | : | |
| | : | |
| Defendant. | : | |

### THE GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

**NOW COMES** the United States of America, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and Joseph Grubb, Special Assistant United States Attorney for the District of Delaware, and hereby respectfully responds to Defendant's Motion to Suppress Physical Evidence and Statements (D.I. 14), as follows:

### INTRODUCTION

The defendant, Teddy Coppedge, has been indicted on one count of being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). This charge arises from evidence obtained pursuant to a stop of the defendant by members of the Wilmington Police Department ("WPD") regarding a traffic violation on April 8, 2008.

### FACTUAL BACKGROUND

At the evidentiary hearing in this matter, the Government presented the testimony of WPD Detective Todd Riley to establish the following facts:

On April 8, 2008, Wilmington Police Officer, Detective Todd Riley, observed a 1995 white Buick Elantra with tinted windows on the corner of Sixth and West Street, in Wilmington,

Delaware. Detective Cunningham was with Detective Riley. The driver was later identified as Teddy Coppedge (hereinafter "defendant"). T-4, 8.

Detective Riley has been a Wilmington Police Officer since November, 2002 and is currently a member of the Drug Organized Crime and VICE Unit. T-3. The detectives were in an unmarked police vehicle and in plain clothes. T-4. After various stops and interactions, the defendant eventually was seen driving westbound on at the intersection of Eighth and Washington Streets, where he disregarded a red light. Detective Riley watched the light cycle properly twice before stopping the defendant. T-6. The only person in the vehicle was the driver, the defendant. T-7. The detectives attempted to contact a marked unit to come and conduct a traffic stop on the defendant, however a unit did not respond in time. T-7.

The defendant parked his car on the south side of the block and exited his vehicle. Detectives Cunningham and Riley put on their marked police vests, approached the defendant to stop him for the traffic violation and identified themselves as police officers. T-8. The defendant appeared visibly shaken and upset. T-8.

The defendant was not initially stopped for the traffic violation because the detectives were in an unmarked police car without the assistance of any lights or other insignia denoting that they were in fact police officers. T-7. The area in which the traffic stop was conducted is a known high crime and drug area, from the detective's experiences. T-12-13. Detective Riley had previously conducted over thirty (30) stops for traffic violations and has personally issued citations for traffic violations as well. T-22-23.

Detective Riley testified that the defendant was handcuffed in order to prevent him from fleeing and for police safety. T-8. Riley then began routine questioning, asking the defendant how

he got to the location, to which the defendant answered that he had walked there and did not have a car in the area. T-9. Riley knew this to be a false statement due to his prior observations and continued to ask questions. After the defendant lied to Detective Riley, he asked the defendant if he had anything illegal on his person, to which the defendant answered that he did not and the defendant consented to a search of his person. T-9.

The defendant was not read his Miranda warnings initially, but rather the defendant was asked typical questions of an individual stopped for a traffic violation. T-9-11. Riley located a car key in the defendant's pocket and asked to what vehicle it belonged. The defendant stated that the key belonged to his cousin's car which was in the Browntown section of the city. T-9. Detective Riley then asked about the Buick parked across the street that he had been observed driving. The defendant confessed that the keys belong to the Buick. T-10. The defendant further explained that he had driven the vehicle and lied because he was scared. The defendant was asked whether there was anything illegal in the vehicle to which he affirmatively answered he had a small amount of "bud" in the center console. Through his training and experience, Detective Riley understood "bud" to mean marijuana. The defendant then consented to a search of the vehicle. T-10. The officer's initial intention was to stop the defendant and issue him a traffic citation. T-26

Detective Riley entered the vehicle and lifted the center console, at which time he located the marijuana (approximately 2 grams) that the defendant said was in the vehicle. T-10. Underneath the marijuana was the door key to the Buick, which also unlocked the glove compartment box. Inside the glove box, Detective Riley observed two plastic bags. Inside the white plastic bag was a clear freezer bag containing approximately 40 grams of marijuana. T-11. Inside the black plastic bag was

one black and blue wool glove and a black handgun (later identified as 9mm Sig Sauer Serial #B124507), loaded with 11 rounds of ammunition. T-11.[1]

The defendant and the vehicle were then transported to Wilmington Police Central where the officers administered the defendant his Miranda rights. The defendant then completed a Miranda waiver form and gave a taped statement. T-11-12.

## LEGAL ARGUMENT

In his motion, the defendant makes three arguments as to why certain evidence in this case should be suppressed. The Government respectfully asserts that each of the defendant's arguments lack merit and that his motion should be denied, and specifically responds as follows:

### A.    The Defendant's Statements Were Not the Product of Custodial Interrogation.

The defendant first contends that the statements he made after being placed in handcuffs, specifically consenting to a search of his vehicle, should be suppressed as being elicited in violation of his Miranda rights. The defendant's Miranda rights did not apply because he was not "in custody" as defined by Miranda, and therefore the statements should not be suppressed.

Police are vested with the constitutional authority to conduct a limited, warrantless, investigatory stop if an officer has a reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 (1968).

---

[1] Det. Riley was asked about and shown notes during the hearing. Det. Riley testified that those notes were not his and that he "believed" he may have written some notes during the post-Miranda interview, but did not recall taking any notes "right after" the detention. The government discussed with defense counsel the issue of notes immediately after the hearing, clarifying that the notes discussed and turned over in discovery were the TFO Fed Up liaison Steve Parrott's notes. Det. Riley did not, in fact, take any notes.

Miranda warnings are required only when a suspect is subject to custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 477-78 (1966). A person temporarily detained for an ordinary traffic stop is not "in custody" for the purpose of Miranda. Berkemer v. McCarty, 468 U.S. 420 (1984). A defendant's Miranda rights only attach if the statement at issue occurred when the defendant was "in custody," and was the product of "interrogation." See Illinois v. Perkins, 496 U.S. 292, 297 (1990). Whether a person is in custody is determined through an examination of the objective circumstances. Berkemer v. McCarty, 468 U.S. at 422. In making this decision, the court must consider the totality of the circumstances. California v. Beheler, 463 U.S. 1121, 1125 (1983). Miranda warnings are not required ion the routine, initial, on-scene investigative steps by the police at a crime scene. Mathis v. U.S., 391 U.S. 1 (1968). Furthermore, a request for consent to search from an individual who is in custody and who has invoked his Miranda rights is not interrogation. U.S. v. Bustamante, 493 F.3d 879, 892 (7th Cir. 2007).

The defendant's statements to the WPD Detectives were made during the course of an investigative traffic stop. The fact that a suspect may not be free to leave the scene of an investigative stop "does not mark the point where the stop escalates into an arrest, since in neither a stop nor an arrest is a suspect free to leave." U.S. v. Edwards, 53 F.3d 616, 619 (3d. Cir. 1995). Also, statements elicited prior to the giving of Miranda warnings may be used during a motion to suppress to show the defendant's consent to a search. U.S. v. Lemon, 550 F.2d 467, 473 (9th Cir. 1977), citing U.S. v. Garcia, 496 F.2d 670, 674-675 (5th Cir. 1974).

The fact that the defendant was placed in handcuffs during part of the traffic stop does not convert the stop into a *de facto* arrest, and thus a custodial situation for Miranda analytical purposes. See Baker v. Monroe Township, 50 F.3d 1186, 1193 (3d Cir. 1995) (holding that no per se rule that

use of handcuffs constitutes an arrest). Police are permitted to use handcuffs on a suspect when the police objectively believe that the suspect is a flight risk under the totality of circumstances. See U.S. v. Prince, 157 F.Supp.2d 316, 325 (D.Del 2001).

In U.S. v. Prince, this Court ruled that a suspect who was handcuffed and placed in the back of the squad car was not "in custody" for purposes of Miranda because the measures were taken in order to advance officer safety and to maintain the status quo during the course of the stop. Id. at 324-25. In Prince, the defendant was the passenger in a vehicle that had been pulled over for traffic violations. During routine questioning, the officer on the scene became suspicious of the identities provided by the defendant and the driver. At some point, the defendant was handcuffed and placed in a police car where she was subject to several questions.

The defendant sought to suppress statements she made while handcuffed and in the police car, arguing they were made while "in custody" and prior to being administered her Miranda rights. This Court ruled that the defendant was not "in custody," explaining, "there is no per se rule that the use of handcuffs or placement in a police car during a traffic stop constitutes an arrest." Id. at 325. This Court went on to state that the measures taken were reasonable because "under the circumstances, it [was] reasonable to be concerned that Prince might attempt to escape. . . . [and] most important, Prince had already acted suspiciously. She was emotional and upset, and had given conflicting stories." Id. Therefore, the defendant was *not in custody* within the meaning of Miranda[.]" (emphasis added) Id.

As in Prince, defendant Coppedge was handcuffed. The defendant Coppedge gave police a false story as to how he arrived at the location. The defendant argues that he was "in custody" because that phrase is used in the police report. However, in the police report, Detective Riley uses

6

the phrase in layman's terms, not as the legal term of art utilized by Miranda. The Terry stop of the defendant Coppedge does not constitute "custody" for purposes of Miranda regardless of handcuffs.

Here, Coppedge was observed for several blocks acting suspiciously in a high drug and crime area by an experienced VICE detective. Coppedge was then seen running a red light. At that point, Detective Riley had reasonable articulable suspicion to conduct a Terry stop of the defendant Coppedge. See Whren v. U.S., 517 U.S. 806, 810 (1996) (holding that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred). When the defendant gets out of his vehicle, the VICE detectives acted and conducted the Terry stop, not an arrest, because the marked units that were requested had not yet arrived. The stop of the defendant was not a custodial arrest. A review of the totality of the circumstances reveal that the officer conducted a legal Terry stop using handcuffs. Detective Riley initially only asked the defendant questions surrounding the traffic violation, specifically questions about the defendant's vehicle and how he got there. The defendant then lied to the detective. Riley then asks more questions surrounding the lie. The defendant eventually admits his lie and also admits to possessing illegal drugs in his vehicle. The defendant then gives unsolicited consent to search his vehicle. It is reasonable under the circumstances for a VICE detective who observed suspicious behavior in a known drug area to handcuff the suspect during a Terry stop. Therefore, the defendant was not "in custody."

**B.    The Defendant Consented to a Search of His Person and Vehicle, Constituting a Waiver of any Fourth Amendment Claim.**

The defendant argues that if his consent to search the vehicle is inadmissible under Miranda, it is necessary also to suppress the physical evidence seized during the search, because consent made

in violation of Miranda is *inherently involuntary* for purposes of search and seizure under the Fourth Amendment. This argument lacks merit because it is incorrect as a matter of law.

It is well established that derivative evidence obtained as a result of non-Mirandized statements is admissible and not precluded under the fruits of the poisonous tree doctrine. U.S. v. Crooks, 2008 WL 1908852, at *6 (D. Del. 2008).

In U.S. v. DeSumma, a case involving non-Mirandized consent to search a vehicle, the Third Circuit stated, "[A] Miranda breach does not necessarily preclude the use of all evidence flowing from the infraction." 272 F.3d 176, 178-79 (3d Cir. 2001). In order to show a violation of the Fourth Amendment, it is not enough to prove a Miranda violation.

The defendant argues that a Miranda violation has necessary implications for non-testimonial evidence because the Miranda exclusionary rule and Fourth Amendment exclusionary rule are effectively one and the same. This argument is incorrect as a matter of law. See U.S. v. Smith, 3 F.3d at 1098 (holding that consent to search is not a self-incriminating statement and, therefore, a request to search does not amount to interrogation).

In order for the defendant to successfully argue for the suppression of the seized weapon, he will have to show that his consent to search the vehicle was *involuntary* according to law, not just *inadmissible* according to Miranda. See U.S. v. Drayton, 536 U.S. 194, 206 (2002) (holding that involuntary consent is determined through analysis of facts and circumstances); Colorado v. Connolly, 479 U.S. 157, 224 (1986) (holding that coercive police activity is necessary predicate to finding that confession is not voluntary within meaning of due process clause). The defendant offers no evidence that his consent was involuntary. He simply argues that if the court finds a Miranda

violation, it must *presume* his statements were involuntary. A Miranda violation does not imply that a statement was involuntary. DeSumma, 272 F.3d at 178-79.

Here, the questioning at issue surrounded the traffic violation until the defendant lied and gave rise to more suspiciousness. The defendant then admitted to the officer that there were illegal drugs in the vehicle. The officer did not demand consent, or threaten consequences if consent was not given. The officers did not even *ask* for consent, but merely asked if the defendant had anything illegal in the vehicle. T-10. The defendant offered his consent without being asked for it. T-10. The consent was clearly voluntary.[2]

The defendant further argues that, as a matter of law, the "fruit of the poisonous tree" doctrine, announced in Wong Sun v. U.S., 371 U.S. 471 (1963), applies here, and that because a Miranda violation occurred, the weapon constitutes "fruit of the poisonous tree" which must be suppressed.

In DeSumma, the Third Circuit stated, "[T]his Court [has previously] observed that Elstad rejected the proposition that the fruit of the poisonous tree doctrine [...] applied to Miranda violations." DeSumma, 272 F.3d at 179.

Violations of Miranda, which safeguard Fifth Amendment rights, do not implicate the "fruits" doctrine, which apply to Fourth Amendment violations. 470 U.S. 298, 306 (1985). Therefore, even if the Court finds that the defendant's consent is inadmissible under Miranda, the

---

[2]Furthermore, the defendant's admission that illegal drugs were in the vehicle makes the search of the vehicle valid pursuant to the automobile exception detailed in Carroll v. U.S., 267 U.S. 132, 153-54 (1925) (holding that so long as police have probable cause to believe that an automobile is carrying contraband or evidence, they may lawfully search the vehicle without a warrant).

weapons seized in the subsequent search should not be considered "fruit of the poisonous tree" and should thus be properly admitted as a matter of law.

    **C.**    **The Defendant's Confession Following the Administration of Miranda Warnings Should Not be Suppressed as Tainted Fruit of a Fourth Amendment Violation.**

The defendant argues that the confession he provided at the police station after receiving his Miranda warning should also be suppressed as "fruit" of the Miranda violation.

The subsequent Miranda warning is sufficient to remove any conditions that may have precluded admission of the earlier, pre-Miranda statements. See U.S. v. Crooks, at *6 (quoting that where a statement is voluntary but made without the benefit of proper Miranda warnings, a subsequent administering of Miranda warnings should suffice to remove the conditions that precluded admission of the earlier statement where the suspect makes a rational and intelligent choice whether to waive or invoke his rights. Id. As noted, the defendant in this case gave both verbal and written waivers of his rights, the voluntariness of which is not being challenged by the defendant.

## CONCLUSION

**UPON THE FOREGOING,** the United States respectfully requests that the Court deny defendant's Motion to Suppress Physical Evidence and Statements.

>Respectfully submitted,
>
>COLM F. CONNOLLY
>UNITED STATES ATTORNEY
>
>BY: /s/Joseph S. Grubb
>     Joseph S. Grubb
>     Special Assistant United States Attorney
>     Delaware Bar I.D. No. 4712
>     The Nemours Building
>     1007 Orange Street, Suite 700
>     P. O. Box 2046
>     Wilmington, DE 19899
>     Joseph.Grubb@usdoj.gov
>     (302) 473-6277 x 157

Dated: August 29, 2008